[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16163
Non-Argument Calendar
_____

Agency No. A078-937-626


OMAR ULISES EUCEDA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 4, 2012)

Before CARNES, MARCUS, and PRYOR, Circuit Judges.

PER CURIAM:

Omar Euceda seeks review of the Board of Immigration Appeals' order

dismissing his appeal of the Immigration Judge's denial of his application for withholding of removal.[1]  Euceda contends that the BIA and IJ erred in finding him not credible.  He also contends that substantial evidence did not support the BIA and IJ's conclusions that he failed to show past persecution or a likelihood of future persecution because of his homosexuality.

I.

Euceda, a native and citizen of Honduras, illegally entered the United States in 2000.  Border patrol caught him that same day and reported that Euceda told them he had entered the United States to travel to Durham, North Carolina to speak with a police detective and the district attorney about his brother's death. An immigration judge ordered Euceda removed in 2009.

About a year later, he returned to the United States.  The Department of Homeland Security charged Euceda with being subject to removal under 8 U.S.C. § 1231(a)(5) as an alien who illegally reentered the United States after having been removed.  DHS conducted a reasonable fear interview, at which Euceda said he was afraid to return to Honduras because he is gay and that people in Honduras

---

[1]Euceda also sought relief under the United Nations Convention Against Torture, which the BIA denied. He does not argue in his opening brief that the BIA erred in denying CAT relief, and as a result he has abandoned that issue.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001).

2

have been attacked because they are gay.  He also said he was afraid that his former partner wanted to kill him.

Euceda formally applied for withholding of removal, and the IJ held a merits hearing.  Euceda presented the following evidence that he would be subject to persecution if returned to Honduras: his own testimony, a 2010 Department of State Country Report in support of his claim that there is a pattern or practice of persecution of Lesbian, Gay, Bisexual, and Transgender (LGBT) persons in Honduras, and expert testimony that Honduran officials are complicit in the persecution of the LGBT community.

The IJ denied Euceda's application for withholding of removal, finding that he was not credible and that he offered insufficient corroborating evidence to overcome this lack of credibility.  The IJ also found that even if Euceda were credible, he failed to show past persecution or the likelihood of future persecution.  The BIA agreed and dismissed Euceda's appeal, and he has petitioned this Court for review.

## II.

"When the BIA issues a decision we review only that decision, except to the extent that it expressly adopts the immigration judge's decision."  Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1312 (11th Cir. 2006).  "To the extent that the BIA

3

does adopt the IJ's reasoning, we review the IJ's reasoning as well." Id.  In this case the BIA basically adopted the IJ's reasoning, even though it restated some of the IJ's reasons for denying Euceda's application for withholding of removal, so we will review both decisions.

We review factual findings, including credibility determinations, under the substantial evidence standard, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001) (internal quotation marks omitted).  In other words, we will reverse the BIA and IJ only if the record compels reversal.  See Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002).

To obtain withholding of removal, an applicant must establish that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).  "The alien bears the burden of demonstrating that it is more likely than not [he] will be persecuted or tortured upon being returned to [his] country." Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (internal quotation marks omitted).  An applicant can meet this burden by showing either: (1) past persecution in his country based on a protected ground or (2) that it

4

is more likely than not he will be persecuted based on a protected ground upon removal to his home country. Id. In showing a likelihood of future persecution, an applicant need not show that he will be singled out for persecution if he can show a "pattern or practice" in his country of "persecution of a group of persons similarly situated to the applicant." 8 C.F.R. § 208.16(b)(2)(i).

While the applicant's credible testimony alone may be enough to meet his burden of proof in establishing his eligibility for relief from removal, an adverse credibility determination may be enough to deny relief where there is no other evidence of persecution. Forgue v. U.S. Att'y Gen. 401 F.3d 1282, 1287 (11th Cir. 2005). The IJ must offer "specific, cogent reasons for an adverse credibility finding." Id.

## A.

In this case, the BIA and IJ provided specific, cogent reasons for the adverse credibility determination, which are supported by substantial evidence. First, the BIA and IJ found that Euceda told inconsistent stories about why he first entered the United States in 2000. When he was caught by border patrol in 2000, he said he was traveling to North Carolina to meet with the district attorney and a police detective about his brother's death. Before the IJ, however, Euceda testified that he fled to the United States after being beaten by his ex-partner, Santos Torres,

5

and Torres' fellow gang members.  Second, the BIA and IJ noted inconsistencies between Euceda's testimony in his reasonable fear interview and his testimony before the IJ.  For example, during his reasonable fear interview, Euceda stated that he feared returning to Honduras because his half-brother and Torres had threatened to harm him.  Before the IJ, however, Euceda testified that he feared returning to Honduras simply because he is gay.  The BIA and IJ also found it significant that Euceda testified before the IJ that he had witnessed the Honduran police engage in violence against people in the LGBT community on several occasions, but he did not mention any of those incidents during his reasonable fear interview.  Third, the BIA and IJ found that critical parts of Euceda's testimony were implausible and lacking in detail.  Both the BIA and IJ noted that although Euceda gave significant detail about the abuse he claimed to have suffered in Honduras, he gave no detail about the alleged attempts of his abusive ex-partner Torres to track him down in the United States and harass him with phone calls.

Euceda offered no evidence to corroborate his testimony about his past persecution in Honduras and instead submitted only general evidence about the conditions in that country.  Without corroborating evidence to support his claim of past persecution, the IJ's adverse credibility determination was enough to support the finding that Euceda did not qualify for withholding of removal based on past

6

persecution.  Forgue, 401 F.3d at 1287.

### B.

The IJ and BIA also did not err in concluding that, even if credible, Euceda did not establish a likelihood of future persecution because he failed to establish a pattern or practice of persecution by the Honduran government or forces it is unable or unwilling to control.  The BIA and IJ relied on the 2010 Department of State Country Report in finding that, while there may be a pattern of violence against LGBT persons in Honduras, the government is neither unwilling nor unable to control this violence.  The report gives specific examples showing that the government has prosecuted both police officers and private persons who committed acts of violence against the LGBT community.

The IJ and BIA were "entitled to rely heavily on" the State Department's Country Report, Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004), and while the Country Report in this case cites only a few examples of prosecutions, it also states that "[t]he prosecutor often encountered serious difficulties in investigating suspicious deaths of LGBT persons because the victims had concealed their identity or sexual orientation."  The Country Report taken as a whole provides substantial evidence to support the BIA and IJ's finding that there is no pattern or practice of persecution of LGBT persons in Honduras.

**PETITION DENIED.**